## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

| | | |
|---|---|---|
| **THOMAS C. MOTTLEY,** | * | |
| *Plaintiff,* | * | |
| v. | * | **Civil Action:  1:13-cv-3915** |
| **EQUIFAX, INC.**<br>**32 South Street**<br>**Baltimore, MD 21202** | *<br><br>* | |
| Serve on: | * | |
| **The Prentice-Hall**<br>**Corporation System, M**<br>**7 St. Paul St., Ste. 1660**<br>**Baltimore, MD 21202** | *<br><br>*<br><br>* | |
| and | | |
| | * | |
| **EXPERIAN INFORMATION**<br>**SOLUTIONS, INC.**<br>**505 City Pkwy West**<br>**Orange, CA 92668** | <br>*<br><br>* | |
| Serve on: | * | |
| **The Corporation Trust**<br>**Incorporated**<br>**351 West Camden St.**<br>**Baltimore, MD 21201** | *<br><br>*<br><br>* | |
| and | * | |
| **TRANS UNION LLC**<br>**1013 Centre Road**<br>**Wilmington, DE 19805** | <br>* | |
| | * | |
| Serve on: | * | |

1

|  |  |
|---|---|
| **CSC-Lawyers Incorporating Service Company** | * |
| **7 St. Paul St., Ste. 1660** | * |
| **Baltimore, MD 21202** | |
| | * |
| **and** | |
| | * |
| **CHASE BANK USA, N.A.** | |
| **Route 273** | * |
| **White Clay Center** | |
| **Building 200** | * |
| **Newark, DE 19711** | |
| | * |
| *Serve on:* | |
| | * |
| **John C. Marion, President** | |
| **Route 273** | * |
| **White Clay Center** | |
| **Building 200** | * |
| **Newark, DE 19711** | |
| | * |
| *Defendants.* | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Thomas C. Mottley, (hereafter the "Plaintiff") by counsel, and for his complaint against the Defendants, alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. § 1681 *et seq.* (Federal Fair Credit Reporting Act) and for the common law tort of defamation.

### JURISDICTION

2. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p) and 28 U.S.C. 1367.

2

3. The Plaintiff is a natural person and resident of the State of Maryland. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

4. Upon information and belief, Equifax, Inc. (hereafter "Equifax") is a corporation incorporated under the laws of the State of Georgia and is authorized to do business in the State of Maryland.

5. Upon information and belief, Experian Information Solutions, Inc. (hereafter "Experian") is a corporation incorporated under the laws of the State of Delaware and is authorized to do business in the State of Maryland.

6. Upon information and belief, Trans Union, LLC (hereafter "Trans Union") is organized under the laws of the State of Delaware and is authorized to do business in the State of Maryland.

7. Upon information and belief, Equifax, Experian and Trans Union are each a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Upon information and belief, Equifax, Experian and Trans Union are regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

8. Upon information and belief, Equifax, Experian and Trans Union disburse such consumer reports to third parties under contract for monetary compensation.

9. Upon information and belief, Chase Bank USA, N.A. (hereafter "Chase") is a national bank, authorized to do business in the State of Maryland, as a consumer and commercial credit card lender.

10. On November 4th and 7th, 2013, Plaintiff requested and received a copy of the credit file of the Plaintiff compiled and maintained by Equifax, Experian and Trans Union.

11. Within each credit report, Equifax, Experian and Trans Union reported that Plaintiff had opened and was responsible for a credit account with Chase, which account was charged-off and closed and had a derogatory payment history (the "Chase representation"). *See* **Exhibit 1** (excerpt of the Equifax credit report showing the Chase representation); **Exhibit 2** (excerpt of the Experian credit report showing the Chase representation); **Exhibit 3** (excerpt of the Trans Union credit report showing the Chase representation).

11. The Chase representation was false because the account information reported related to a corporate business credit account for Mottley Group LLC for which the Plaintiff did not contractually agree to accept personal liability or to otherwise personally guarantee the debt or amounts owed. The corporate business credit account was applied for on January 21, 2003, from Bank One Corporation and was known as a "Bank One Platinum Visa Business Card." Although a $20,000 line of credit was requested, Bank One only agreed to provide a total credit line of $7,500.00. On July 1, 2004, Bank One Corporation was merged into JPMorgan Chase & Co.

12. Despite repeated requests, Chase has refused to produce to the Plaintiff the terms of the "Business Cardmember Agreement" that governed the Bank One Platinum Visa Business Card account that Mottley Group LLC opened with Bank One Corporation. Instead, Chase has intentionally misled Equifax, Experian and Trans Union by providing them with a copy of the 2003 application for the Bank One Visa Business Card but attaching to it the **Chase** "Business Card Agreement" that became effective on **February 22, 2010**.

4

13. The Chase representation was also false because the Plaintiff had left Mottley Group LLC in 2004 and the Chase representation related to conduct that occurred after the Plaintiff had left the business.

14. The monthly account statements issued by Bank One properly reflected that the party responsible for the payments was "Mottley Group LLC" and that Thomas C. Mottley's card had not been used for purchases after he left the company. After the merger into Chase, Chase modified the monthly statements to indicate that the payments were being made by "Thomas C. Mottley" even though they were actually being made by the Mottley Group LLC.

15. Chase knew by no later than May 28, 2006, that Plaintiff was no longer affiliated with the Mottley Group LLC because at that time the Mottley Group LLC applied for and was granted an increase in its total credit line to $9,800.00. When this credit line increase was granted there was no outstanding balance owed on the account. Additional credit line increases occurred in February 2007 (to $11,800); July 2008 (to $14,200) and December 2008 (to $25,000.00). None of these credit line increases were requested by or authorized by the Plaintiff because he had left the business in 2004.

16. On September 11, 2008, Chase cashed a "convenience check" drawn on the account in the amount of $7,000.00. This check was not signed by the Plaintiff and provided Chase with further notice that the Plaintiff was no longer an owner or officer of the Mottley Group LLC. Other convenience checks were drawn on the account on December 16, 2008 (in the amount of $5,000) and December 18, 2008 (in the amount of $2,000) and December 29, 2008 (in the amount of $10,000). None of these checks were signed by the Plaintiff.

5

17. On November 6, 2013, Plaintiff contacted Chase disputing the Chase representation and requested further information regarding same, including the original business card agreement in existence when the account was opened in 2003. **Exhibit 4**. Chase responded but failed to provide the original "Bank One Platinum Visa Business Card" agreement in existence when the account was opened in 2003 and therefore was unable to establish any factual basis supporting the Chase representation that the Plaintiff was responsible for the account. Instead Chase provided a copy of the **Chase** "Business Card Agreement" that became effective on **February 22, 2010**.

18. On November 7, 2013, Plaintiff contacted Equifax, Experian and Trans Union disputing the Chase representation. **Exhibit 5**, **Exhibit 6**, **Exhibit 7**.

19. Copies of each of these dispute letters were also faxed to Chase.

20. Equifax responded by a report dated December 5, 2013. **Exhibit 8**. Experian responded by a report dated December 3, 2013. **Exhibit 9**. Trans Union responded by a report dated December 5, 2013. **Exhibit 10**.

21. Upon the Plaintiff's request for verification and deletion, and in accordance with its standard procedures, Equifax, Experian, and Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Chase representation.

22. In the alternative to the allegation that Equifax, Experian, and Trans Union failed to contact Chase, it is alleged that Equifax, Experian, and Trans Union did forward some notice of the dispute to Chase and Chase failed to conduct a lawful investigation.

23. The Plaintiff has maintained excellent credit and the only negative item on his credit report is the Chase representation.

24. The Chase representation has caused significant damage to the Plaintiff. Plaintiff had a lot loan of $272,000 coming due with Susquehanna Bank at the end of November, 2013. The loan had an original 3 year term and 3 one year extensions had been previously approved. Susquehanna indicated that it was willing only to consider a full refinancing of the loan but then ultimately decided not to approve a refinance, due in part to the Chase representation. The mortgage on the Plaintiff's home is due for a rate adjustment next year. Plaintiff recently made several applications in an effort to refinance this mortgage so as to benefit from the current interest rate. Plaintiff's current lender as well as two lenders — Quicken Loans and Bank of America — have refused to refinance the loan or otherwise provide credit to the Plaintiff as a direct result of the Chase representation. These refusals have caused the Plaintiff professional embarrassment because he has had to resort to seeking credit from M & T Bank where he is a member of its North East Advisory Council. That bank is currently considering offering the Plaintiff a VIP loan based upon a credit exception which will add an additional 1/2 percent to the interest rate resulting in additional interest of $37,199.50 over the life of the loan.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1681e(b) BY EQUIFAX, EXPERIAN and TRANS UNION

25. The Plaintiff realleges and incorporates paragraphs 1 through 24 above as if fully set out herein.

26. Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

27. As a result of this conduct, action and inaction of Equifax, Experian, and Trans Union, the Plaintiff suffered damage in the form of increased cost of credit and the personal embarrassment of having to seek special approval for credit from M & T Bank.

28. The conduct of Equifax, Experian, and Trans Union was willful, rendering each liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

29. The Plaintiff is entitled to recover costs and attorney's fees from Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## VIOLATION OF 15 U.S.C. § 1681i EQUIFAX, EXPERIAN and TRANS UNION

30. Plaintiff realleges and incorporates paragraphs 1 through 29 above as if fully set out herein.

31. Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to Chase; by failing to maintain reasonable procedures with

which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

32. As a result of this conduct, action and inaction of Equifax, Experian, and Trans Union, the Plaintiff suffered damage in the form of increased cost of credit and the personal embarrassment of having to seek special approval for credit from M & T Bank.

33. The conduct of Equifax, Experian, and Trans Union was willful, rendering each liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

34. The Plaintiff is entitled to recover costs and attorney's fees from Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
## DEFAMATION BY CHASE

35. Plaintiff realleges and incorporates paragraphs 1 through 34 above as if fully set out herein.

36. Chase published the Chase representations to Equifax, Experian, and Trans Union and through Equifax, Experian, and Trans Union to all of Plaintiff's potential lenders on multiple occasions, including but not limited to the Chase response to Equifax, Experian, and Trans Union published just prior to November 1, 2013, and which formed the basis of the dispute letters to Equifax, Experian, and Trans Union and Chase (the "Defamation").

37.     The Defamation was willful and with malice. Chase had actual knowledge that the Plaintiff was not legally responsible to pay any amount for the account reported in the Chase representation. Alternatively, Chase did not have any reasonable basis to believe that the Plaintiff was responsible for the account reported in the Chase representation. Chase also had substantial evidence by which to have verified that the Plaintiff had not agreed to be personally responsible for the account reported in the Chase representation. Chase willfully determined to follow procedures which did not review, confirm or verify whether the Plaintiff had agreed to be personally responsible for the account reported in the Chase representation. Further, even if Chase would attempt to plead ignorance prior to November 1, 2013, it had all of the evidence and information with which to confirm and recognize the Plaintiff was not legally obligated to pay any amount to Chase. Chase also intentionally deceived Equifax, Experian, and Trans Union by providing them with a copy of the 2003 application for the Bank One Visa Business Card but attaching to it the **Chase** "Business Card Agreement" that became effective on **February 22, 2010**.

38.     As a result of this conduct, action and inaction of Equifax, Experian, and Trans Union, the Plaintiff suffered damage in the form of increased cost of credit and the personal embarrassment of having to seek special approval for credit from M & T Bank.

39.     The Defamation, conduct and actions of Chase were willful, deliberate, intentional and/or with reckless disregard for the interests and rights of Plaintiff such as to justify an award of punitive damages against Chase in an amount to be determined by the Court.

## COUNT IV
## VIOLATION OF 15 U.S.C. § 1681s-2(b) BY CHASE

40. Plaintiff realleges and incorporates paragraphs 1 through 39 above as if fully set out herein.

41. Chase violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by continuing to report the Chase representation within Plaintiff's credit file with Equifax, Experian, and Trans Union by omitting information that it could not prove that the Plaintiff was personally responsible for the account thereby rendering the reported information misleading; by failing to fully and properly investigate the Plaintiff's dispute of the Chase representation; by failing to review all relevant information regarding same; by failing to accurately respond to Equifax, Experian, and Trans Union; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Chase representation to the consumer reporting agencies.

42. As a result of this conduct, action and inaction of Equifax, Experian, and Trans Union, the Plaintiff suffered damage in the form of increased cost of credit and the personal embarrassment of having to seek special approval for credit from M & T Bank.

43. Chase's conduct, action and inaction was willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

44. The Plaintiff is entitled to recover costs and attorney's fees from Chase in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

WHEREFORE, Plaintiff, Thomas C. Mottley, respectfully prays for a judgment against Defendants as follows:

 a. Actual damages sustained in an amount in excess of $75,000.00 or statutory damages of not less than $100 and not more than $1,000 for violations of the FCRA;

 b. Such amount of punitive damages as the Court may allow for violations of the FCRA;

 c. The costs of the action together with reasonably attorney's fees as determined by the Court;

 d. Such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Thomas C. Mottley hereby demands a trial by jury on all issues in this action, except for any issues relating to the amount of statutory damages, punitive damages, attorney's fees and litigation costs.

Dated: December 30, 2013    Respectfully Submitted,


    */s/ E. David Hoskins*_____
    E. David Hoskins, Esq. , No. 06705
    THE LAW OFFICES OF E. DAVID HOSKINS, LLC
    16 East Lombard Street, Suite 400
    Baltimore, Maryland 21202
    (410) 662-6500 (Tel.)
    dhoskins@hoskinslaw.com

*/s/ Max F. Brauer*
Max F. Brauer, Esq., No. 11306
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)
*maxbrauer@hoskinslaw.com*
